IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MICHELLE A. BOHATCH,<br>        Plaintiff, | )<br>)<br>) |
| v. | )   Civil Action No. 05-1044 |
| | )<br>) |
| COMMISSIONER OF SOCIAL<br>SECURITY,<br>        Defendant. | )<br>)<br>) |

REPORT AND RECOMMENDATION

I.    Recommendation

It is respectfully recommended that the defendant's motion for summary judgment (Docket No.12) be granted, and that the decision of the Commissioner be affirmed.

II.    Report

Presently before the Court for disposition are cross motions for summary judgment.

On July 28, 2005, Michelle A. Bohatch, by her counsel, filed a complaint pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. §405(g) for review of the Commissioner's final determination disallowing her claim for a period of disability or for disability insurance benefits under Sections 216(i) and 223 of the Social Security Act, as amended, 42 U.S.C. §§416(i) and 423.

On March 6, 2004, the plaintiff filed an application for disability benefits alleging that she had been disabled since December 15, 2000 (R.51-53), and benefits were denied on April 27, 2004 (R.29-33). On May 23, 2004, the plaintiff requested a hearing (R.34) and pursuant to that request a hearing was held on December 10, 2004 (R.455-521). In a decision dated

December 17, 2004, benefits were denied (R.13-22), and on December 20, 2004, reconsideration was requested (R.11). Upon reconsideration and in a decision dated July 8, 2005, the Appeals Council affirmed the prior determination (R.6-8). On July 28, 2005, the instant complaint was filed.

In reviewing an administrative determination of the Commissioner, the question before any court is whether there is substantial evidence in the agency record to support the findings of the Commissioner that the plaintiff failed to sustain his burden of demonstrating that he was disabled within the meaning of the Social Security Act. Richardson v. Perales, 402 U.S. 389 (1971); Adorno v. Shalala, 40 F.3d 43 (3d Cir. 1994).

It is provided in 42 U.S.C. Section 405(g) that:

The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing. The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive....

Substantial evidence is '"more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)." Richardson v. Perales, supra., at page 401; Plummer v. Apfel, 186 F.3d 422 (3d Cir. 1999).

At the hearing held on December 10, 2004 (R.455-521), the plaintiff appeared with counsel (R.457) and testified that she was born on December 13, 1964 (R.462); that she graduated from high school (R.462); that she worked as a semi-conductor etcher, performed house cleaning, worked as a nursing home assistant and workshop instructor (R.465, 467, 471, 473, 475); that she sustained a herniated disc at work on December 15, 2000 (R.477-479); that

she returned to work from April 2, 2001 through May 4, 2001 (R.485) and that she is receiving Worker's Compensation benefits and child support payments (R.464).

The plaintiff also testified that she experiences neck and shoulder pain as well as frequent migraine headaches (R.479-481, 501); that she receives injections in her shoulder (R.483) that her neck pain comes and goes but her shoulder and arm pain are constant (R.498); that she can lift about ten pounds (R.507); that she spends six or seven hours a day in a recliner (R.499); that her medication sometimes causes memory problems (R.493-495), and that she can care for her own needs (R.486-487).

At the hearing, a vocational expert was called upon to testify (R.509-518). The witness characterized the plaintiff's prior work experience as light to medium unskilled to skilled in nature (R.511-513). She was asked to assume an individual of the plaintiff's age, educational and work experience who was restricted to light work and who must avoid right shoulder movements (R.513-514) and testified that such an individual could not perform the plaintiff's prior work but would be able to perform a large number of other jobs which exist in the national and local economy (R.514-515). However, the witness also testified that if the individual had to take frequent work breaks, or take excessive work absences she could not be employed (R.516-517).

The issue before the Court for immediate resolution is a determination of whether or not there is substantial evidence to support the findings of the Commissioner that the plaintiff was not disabled within the meaning of the Act.

The term "disability" is defined in 42 U.S.C. Section 423(d)(1)(A) as:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in

death or which has lasted or can be expected to last for a continuous period of not less than 12 months....

For purposes of the foregoing, the requirements for a disability determination are provided in 42 U.S.C. Section 423(d)(2)(A):

An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.  For purposes of the preceding sentence ... "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

A "physical or mental impairment" is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. Section 423(d)(3).  These provisions are also applied for purposes of establishing a period of disability.  42 U.S.C. Section 416(i)(2)(A).

While these statutory provisions have been regarded as "very harsh," nevertheless, they must be followed by the courts.  NLRB v. Staiman Brothers, 466 F.2d 564 (3d Cir. 1972); Choratch v. Finch, 438 F.2d 342 (3d Cir. 1971); Woods v. Finch, 428 F.2d 469 (3d Cir. 1970).  Thus, it must be determined whether or not there is substantial evidence in the record to support the conclusion of the Commissioner that the plaintiff was not disabled within the meaning of the Social Security Act.

For this purpose, certain medical evidence was reviewed.

The plaintiff was treated at the Jeannette District Memorial Hospital Emergency Room on March 9, 2000 for vomiting. A diagnosis of acute pharyngitis was made (R.352-362).

The plaintiff was awarded Worker's Compensation benefits due to a strain which occurred on February 15, 2001 (R. 54-55).

The plaintiff attended physical therapy for a cervical strain and muscle spasm between December 28, 2000 and March 16, 2001 (R.119-148).

The plaintiff was hospitalized from May 23, 2001 through May 24, 2001 for a herniated C5-6 disc resulting from a work injury. An anterior cervical discectomy was performed. On discharge she was limited to lifting ten pounds (R.149-162).

The plaintiff was treated for right shoulder pain on June 3, 2001 and medication was prescribed (R.163-165).

The plaintiff was treated by Dr. Daniel Haffner between August 28, 2001 and September 18, 2001 for upper right arm pain. He provided injections into the site which provided some relief (R.166-170).

The plaintiff was hospitalized at Westmoreland Hospital from November 29, 2001 through November 30, 2001 for a nonunion of C5-6. Surgery was performed (R.171-180).

The plaintiff was treated by Dr. Lawrence E. Freeberg between December 27, 2001 and February 27, 2002 for a partial sensory neurogenic bladder condition (R.181-187).

The plaintiff was treated by Dr. Daniel J. Muccio between April 23, 2001 and April 15, 2002 for neck and right shoulder pain (R.188-206).

In a report of an examination dated April 22, 2002, Dr. Gregory R. Lauro diagnosed right upper arm and shoulder hypersensitivity. He did not believe surgery would be appropriate but recommended conservative treatment and physical therapy (R.207-208).

The plaintiff attended the Pennsylvania Physical Medicine facility between February 28, 2001 and July 23, 2002 where she received physical therapy. The plaintiff's electrodiagnostic evaluation was normal. Decreasing pain medication and increasing activity was recommended (R.209-225).

The plaintiff was treated at the Latrobe Area Hospital between March 21, 2001 and August 9, 2002 for urinary retention, and cervical pain. A cystoscopy and cystonetrogram was performed (R.226-236).

The plaintiff received physical therapy for her right shoulder at the Westmoreland Regional Hospital between June 12, 2002 and September 9, 2002. Treatment was discontinued because the plaintiff had missed three appointments (R.237-249).

The plaintiff was treated by Dr. Derek E. Peske between January 4, 2001 and September 10, 2002 for depression, endometriosis, neurogenic bladder, fibromyalgia, reflex sympathetic dystrophy, chronic pain and migraine headaches. It was noted that the plaintiff could sit, stand, walk or drive for six hours, frequently lift up to twenty pounds and continuously lift up to ten pounds (R.250-297).

The plaintiff was treated at Westmoreland Neurology between August 12, 2002 and September 23, 2002 for cervicobrachial pain. An EMG did not demonstrate any evidence of significant compression neuropathy. Medication and participation in a pain clinic were recommended (R. 298-303).

The plaintiff was treated by Dr. Mani Bashyam on May 29, 2002 and September 27, 2002 for a non-toxic goiter (R.304-306).

The plaintiff last met the special earnings requirement of the Act on September 30, 2002.

The plaintiff was treated at the Westmoreland Hospital between March 21, 2001 and October 15, 2002 where thyroid and spinal studies were conducted (R.307-329).

Dr. Neil Braunstein reported on November 1, 2002 and December 3, 2002 diagnoses of reflex sympathetic dystrophy causing right arm pain. He doubted that the plaintiff had fibromyalgia (R.330-337).

The plaintiff was treated at the Jeannette District Memorial Hospital Emergency room on February 1, 2003 following a fall resulting in head, neck and shoulder pain. A diagnosis of cervical strain was made (R.363-374).

The plaintiff was treated at the Jeannette Memorial Hospital Emergency room on October 7, 2003 for bilateral knee pain. Very early arthritic changes were noted (R.375-385).

The plaintiff was evaluated by Dr. Laura M. Shymansky on December 31, 2003 and February 9, 2004 and a diagnosis of post C5-6 cervical discectomy and fusion, reflex sympathetic dystrophy involving the right arm, depression and neurogenic bladder was made (R.338-341).

After reviewing the medical evidence and in a residual functional capacity assessment completed on April 16, 2004, it is noted that the plaintiff could occasionally lift twenty pounds, frequently lift ten pounds, and stand, walk or sit for about six hours (R.344-351).

The plaintiff was seen by Bruce A. Sorkin, Ph.D. on April 13, 2004 and April 23, 2004 and a diagnosis of dysthymic disorder was made. Cognitive therapy was recommended (R.386-391).

The plaintiff was treated between March 10, 2003 and May 3, 2004 by Dr. Michael P. Toshok who recommended a stimulator and medication for pain management (R.392-422).

The plaintiff was treated at the Jeannette Hospital Emergency room on August 2, 2004 for foot swelling and right leg pain. No evidence of venous thrombus was found. No cause for the pain was discovered (R.423-437).

In reports dated February 9, 2004, July 28, 2004 and August 24, 2004, Dr. Laura M. Shymansky diagnosed post C5-6 anterior cervical discectomy, reflex sympathetic dystrophy of the right arm, depression and neurogenic bladder (R.438-444).

In reports dated June 28, 2004 and September 27, 2004, Dr. Michael P. Toshok diagnosed postlaminectomy cervical spinal syndrome and history of myofascial pain. Medication was recommended (R.445-454).

In reviewing a disability claim, in addition to considering the medical and vocational evidence, the Commissioner must consider subjective symptoms. Baerga v. Richardson, 500 F.2d 309 (3d Cir. 1974). As the court stated in Bittel v. Richardson, 441 F.2d 1193, 1195 (3d Cir. 1971):

> Symptoms which are real to the claimant, although unaccompanied by objective medical data, may support a claim for disability benefits, providing, of course, the claimant satisfies the requisite burden of proof.

In Good v. Weinberger, 389 F. Supp. 350, 353 (W.D. Pa. 1975), the Court stated:

> Bittel seeks to help those claimants with cases that so often fall within the spirit--but not the letter--of the Act. That plaintiff did not satisfy the factfinder in this regard, so long as proper criteria were used, is not for us to question.

The applicable regulations require more explicit findings concerning the various vocational facts which the Act requires to be considered in making findings of disability in some

8

cases. The regulations, published at 20 C.F.R. §§404.1501, et seq., set forth an orderly and logical sequential process for evaluating all disability claims. In this sequence, the Administrative Law Judge must first decide whether the plaintiff is engaging in substantial gainful activity. If not, then the severity of the plaintiff's impairment must be considered. If the impairment is severe, then it must be determined whether he meets or equals the "Listings of Impairments" in Appendix 1 of the Regulations which the Commissioner has deemed of sufficient severity to establish disability. If the impairment does not meet or equal the Listings, then it must be ascertained whether he can do his past relevant work. If not, then the residual functional capacity of the plaintiff must be ascertained, considering all the medical evidence in the file. The finding of residual functional capacity is the key to the remainder of findings under the new regulations. If the plaintiff's impairment is exertional only, (i.e. one which limits the strength he can exert in engaging in work activity), and if his impairment enables him to do sustained work of a sedentary, light or medium nature, and the findings of age, education and work experience, made by the Administrative Law Judge coincide precisely with one of the rules set forth in Appendix 2 to the regulations, an appropriate finding is made. If the facts of the specific case do not coincide with the parameters of one of the rules, or if the plaintiff has mixed exertional and non-exertional impairments, then the rules in Appendix 2 are used as guidelines in assisting the Administrative Law Judge to properly weigh all relevant medical and vocational facts.

> Based on the evidence presented, the Commissioner concluded:
>
> The medical evidence establishes the claimant has reflex sympathetic dystrophy resulting from two cervical surgeries. Although severe, this impairment does not meet the requirements set for in ... Listing 11.00, Neurological, or any of the other

impairments listed ... at any time on or prior to September 30, 2002, her date last insured...

Specifically, she failed to meet the requirements of Listing 1.04, as there was no evidence of recurrent herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, facet arthritis, or vertebral fracture resulting in compromise of a nerve root or spinal cord with limitation of spine motion and motor loss accompanied by sensory or reflex loss.

Additionally, she failed to meet the requirements of Listing 11.00 et. al., as there was no evidence of persistent disorganization of motor function in the form of paresis or paralysis, tremor or other involuntary movement, ataxia and sensory disturbances, which occur singly or in various combinations, resulting in sustained disturbance of gross and dexterous movements or gait and station.

* * *

As a result of the claimant's reflex sympathetic dystrophy resulting from two cervical surgeries, the undersigned concludes she was limited to light work activity on and prior to her date last insured, September 30, 2002. Further, she needed to avoid fine fingering, gross handling, overhead reaching, feeling, pushing and pulling with the right upper extremity with such extremity to be treated as an amputation at shoulder level; even moderate exposure to cold temperature extremes and vibration more than as in a passenger car and due to the side-effects of medications was limited to simple, routine, repetitive tasks in a non-production or quota-based environment involving only simple, work-related decisions... It is apparent the claimant was precluded from performing her past relevant work, as she was limited to light, unskilled work activity.

* * *

Under [the] assumptions [provided], the vocational expert testified such an individual could perform work ... as a hostess/usher/greeter, an inside guard and a weigher with 1,040 jobs locally, over 71,000 regionally and over 1.4 million nationally at the light exertional level...

In summary, the evidence shows the claimant was 36 years of age on her alleged onset date of disability and was 37 years of age on September 30, 2002, her date last insured, which is defined as a younger individual. She has a high school education and a semi-skilled work background with no transferable skills. The evidence further supports a finding she retained the residual functional capacity to perform a wide range of work at the light exertional level on a sustained basis on and prior to September 30, 2002, her date last insured. Considering her functional capacity in conjunction with her vocational profile, the undersigned finds the

claimant was not disabled... at any time on or prior to September 30, 2002, her date last insured. (R.16-20).

The record demonstrates that the plaintiff suffered from serious cervical injury requiring two surgeries and producing residual limitations. Nevertheless, on September 30, 2002, the date on which she was last insured, she retained the residual functional capacity to engage in a wide range of light work activities even with certain restrictions imposed. For this reason, the conclusion of the Commissioner that she was not disabled within the meaning of the Act on or before September 30, 2002, is supported by substantial evidence.

Summary judgment is appropriate when there are no disputed material issues of fact, and the movant is entitled to judgment as a matter of law. Bierner v. Calio, 361 F.3d 206 (3d Cir. 2004). In the instant case, there are no material factual issues in dispute, and it appears that the Commissioner's conclusion is supported by substantial evidence. For this reason, it is recommended that the defendant's motion for summary judgment be granted, and that the decision of the Commissioner be affirmed.

Within ten days after being served with a copy, any party may serve and file written objections to the report and recommendation. Any party opposing the objections shall have seven (7) days from the date of service of objections to respond thereto. Failure to file timely objections may constitute a waiver of any appellate rights.

                                      Respectfully submitted,

                                      s/ROBERT C. MITCHELL,
Filed: December 14, 2005          United States Magistrate Judge